## W. C. Davis, Jr., Appellant, v. E. R. Hincke and Mary Hincke, Appellees.

1. FRAUDS, STATUTES OF, § 27*—*when statute making a loan of personal property fraudulent to creditors inapplicable.* R. S. c. 59, § 7, J. & A. ¶ 5873, providing that pretended loans of goods and chattels shall be fraudulent as to creditors, where allowed to remain in possession of borrower for five years, etc., *held* not to apply where money is intrusted to an agent to loan, and the agent without consulting the principal takes out the loan in his own name.

2. CREDITORS' SUITS, § 56*—*when evidence insufficient to establish ownership of notes in judgment debtor.* On creditor's bill to discover property owned by judgment debtor, evidence *held* not to establish that notes in the hands of his mother belonged to the judgment debtor.

3. CREDITORS' SUITS, § 9*—*when excess of collateral securities may be reached on creditor's bill.* On creditor's bill to discover property of judgment debtor, where the debtor has pledged collateral security of a greater value than the indebtedness secured, the excess may be reached.

4. APPEAL AND ERROR, § 971*—*questions precluded by failure to introduce evidence in trial court.* On appeal from a decree dismissing a creditor's bill, appellant cannot urge that collaterals pledged by debtor were of a greater value than the indebtedness

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

secured, where he introduced no evidence on the trial showing such fact.

Appeal from the Circuit Court of Perry county; the Hon. George A. Crow, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed October 9, 1913.

Sprigg & Gilster and Whitnel & Browning, for appellant.

B. W. Pope, for appellees.

Mr. Presiding Justice McBride delivered the opinion of the court.

Upon the hearing of the evidence the Circuit Court dismissed complainant's bill for want of equity and he prosecutes this appeal.

Complainant filed a bill to the November Term, 1911, of the Circuit Court of Perry county alleging that he obtained a judgment, and purchased of the First National Bank other judgments, against E. R. Hincke, totaling $4,657; that executions were issued upon said judgments and returned, no property found, and complainant files this his creditor's bill for the purpose of discovering property owned by E. R. Hincke and charges that he believes that the defendant E. R. Hincke has an interest in real estate, moneys, stocks, bonds and notes that are in the hands of Mary Hincke and are concealed so that the complainant cannot subject such property to the payment of its judgments; that the defendant E. R. Hincke has made a pretended sale, assignment, conveyance, gift, evidenced by bailments or delivery by other secret devices or contrivance, divers bonds, stocks, promissory notes and other personal property due from other persons, to the said Mary Hincke with intent to hinder and delay your orator in the collection of his judgments. The bill then charges specifically that one W. S. Wilson is indebted to E. R. Hincke in the amount of $22,000, evidenced by two promissory notes of $10,000 each, and

one promissory note for $2,000, and that said notes were secured by stock of the First National Bank of Pinckneyville and the Carterville State Bank of Carterville, and of the Bessemer Washed Coal Company owned by the said W. S. Wilson, and that the said Mary Hincke now has possession of both said notes and said security, and charges that said notes and security should be applied to the satisfaction of complainant's judgments and asks that the defendants be required to make answer to said bill and to set forth and discover the situation, amount and value of the property, stock, bonds and other evidence of indebtedness due or to become due to the said E. R. Hincke and held in trust for him by Mary Hincke; and that Mary Hincke be required to set forth whether or not there has been conveyed to her any property or effects of the said E. R. Hincke in which the said E. R. Hincke by any agreement, private understanding, trust or confidence has therein any equity of redemption, right or interest whatsoever, and as to whether or not she is in any manner indebted to the said E. R. Hincke.

The answer of E. R. Hincke denies that he has any interest in the notes of W. S. Wilson, and the securities accompanying the same, but avers that these notes were given for money loaned to W. S. Wilson and that the money loaned to the said W. S. Wilson was the money of Mary Hincke. That in about the year 1901 Mary Hincke became possessed of a considerable amount of personal property and that as she was very old, her son, the defendant E. R. Hincke, undertook the management of the property and loaning of the money for her and that he did, from time to time, loan to W. S. Wilson money to the amount of $22,000; that at the time the notes were taken they were made payable to E. R. Hincke but that he was only acting as the agent of Mary Hincke in the loaning of said money and that afterwards the notes were renewed and made payable to Mary Hincke. The defendant further an-

swering sets forth all of the property owned by him being household and kitchen furniture; four hundred and seventy-five shares of the capital stock of the Bessemer Washed Coal Company, face value $24,500; eighteen shares of stock in the First National Bank of Percy, Illinois, forty-nine shares of stock in the First National Bank at Pinckneyville, Illinois; twenty shares of stock in the Carterville State & Savings Bank; ten shares in the Pinckneyville Light & Power Company; nineteen shares in the Nesbit Mercantile Company; thirty-five shares in Cripple Creek Investment Company, and then avers that all of said stock has been put up by him as collateral security and for the purpose of securing one note to William Stevenson for $3,000; one note to J. S. Lewis for $8,300; three notes to Mary Hincke, one for $1,000, one for $4,000 and one for $5,800, and that he now has on hand the sum of $155, and a credit from the Nesbit Mercantile Company for $90, and denies having any other property or any interest whatsoever in any other property.

The separate answer of Mary Hincke denies any actual knowledge of said judgments and denies that she has in her possession and control any stocks, bonds, notes or any other evidence of indebtedness belonging to E. R. Hincke or any other moneys or securities in which he has an interest, and adopts the answer of E. R. Hincke, and avers specifically that she is the owner of the said Wilson indebtedness, and denies that E. R. Hincke has any interest whatever therein, and avers that she is of the age of seventy-six years and that for many years last past said E. R. Hincke has transacted her business for her. To these answers the complainant filed a general replication.

It appears from the evidence in this case that prior to 1901, the husband of Mary Hincke died and left her an estate valued at from one hundred to one hundred and fifty thousand dollars, of which considerable of it was money, and that Mary Hincke procured her

Davis v. Hincke et al., 183 Ill. App. 475.

son, E. R. Hincke, as agent, to loan this money. That E. R. Hincke loaned W. S. Wilson, from time to time, between 1901 and 1909, various sums of money totaling $22,000. That the money loaned to Wilson was the property of Mary Hincke and that E. R. Hincke had no interest therein but the notes were taken in the name of E. R. Hincke, and on about April 1, 1909, these notes were renewed and taken in the name of Mary Hincke. It further appears from the evidence that as payments were made upon this loan, and others, they were deposited in the bank to the credit of Mary Hincke and certificates of deposit were taken from time to time in the name of E. R. Hincke, which is shown by this record to be owned in fact by Mary Hincke; that these certificates of deposit were issued between April 25, 1905 and April 25, 1909, and made payable to E. R. Hincke. It cannot be determined from this record how much of this money was loaned to Wilson prior to 1905. Wilson says that about April 1, 1909, he owed E. R. Hincke $22,000, evidenced by notes but does not know how long that indebtedness had been running. That there were a number of the notes that ran from 1905 on and says some of them may have been further back than that. The testimony of E. R. Hincke is that he loaned the money from time to time from 1901 to 1909. There were three of the old notes offered in evidence that had been renewed, one for $2,000 bearing date of April 1, 1905, and two notes of $10,000 each bearing date of April 1, 1908, and these notes it appears were all renewed on April 1, 1909, and made payable to Mary Hincke. It also appears from the evidence that E. R. Hincke had borrowed money from his mother and that in 1909, having realized that he was unable to meet his indebtedness, he caused the Wilson notes and the certificates of deposit and other matters that he had been handling for his mother to be placed in her name and at the same time transferred to her valuable securities as collateral to secure moneys that he had borrowed from her.

It appears from the sworn answers of the defendants and from the evidence in this record that Mary Hincke was in fact the owner of this $22,000 that was loaned to Wilson and of the several certificates of deposit that were transferred to her, and no attempt was made upon the part of complainants to dispute this fact. Counsel for appellant, however, insist that as the loans made and certificates of deposit were taken in the name of E. R. Hincke and held by him, as claimed, for five years or more, that this was such a fraud as to estop the defendant Mary Hincke from claiming this property as her own, and reliance is placed upon section 7, c. 59 of Hurd's Revised Statutes, (J. & A. ¶ 5873), which is as follows: ''Where any loan of goods and chattels shall be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained for the space of five years, without demand made and pursued by due process of law, on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of an use or property by way of condition, reservation, remainder or otherwise, in goods or chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken, as to creditors and purchasers of the person aforesaid, so remaining in possession, to be fraudulent, and that the absolute property is with the possession, unless such loan, reservation or limitation of use or property were declared by will or deed in writing proved and recorded as aforesaid.''

It seems to us from the reading of this statute that it is contemplated that a loan of the property must be made by the owner to bring it within the provisions of this section. That there must have been a borrowing of the particular property to begin with and that if the particular property was allowed to remain in the hands of the borrower for five years then in law it became the property of the borrower, so far as his creditors were concerned. While this statute might

refer to the loaning of and security, such as notes or stock or something of that character that had identity and could be held by the borrower as the identical property, or even exchanged for other property, yet we do not understand that it could have reference to money loaned, as the very moment that the money was loaned it would become a credit to the lender and a debt of the borrower, unless it was money placed in a bag or in some manner contained so as to preserve its identity, and we do not believe that the loaning as shown by this evidence comes within the provision of that statute, even if it is held to be a loan, but the undisputed evidence shows that it was not a loan but was simply money intrusted to an agent to loan and that he without consulting the principal, took the loans in his own name and in the end was only a restoration of the property to the principal.

It further appears from the evidence in this case, so far as we are able to determine from this record, that the principal part of the loans made to Wilson was after April, 1905, and that they were restored to the principal on April 1, 1909. It is true it appears that the loans were made from time to time from 1901, until 1909, and Wilson says he thinks some of them were made prior to 1905, but the only notes offered in evidence showing the dates of such loans were notes bearing date after April 1, 1905, and it was for the complainant to show the length of time these notes were in possession of E. R. Hincke, to bring him within the provisions of this statute. The certificates of deposit which are also claimed to come within the provisions of this statute all appear to have been made in the name of E. R. Hincke between July 28, 1905, and July 14, 1908, and it does not appear that these certificates of deposit were held by E. R. Hincke for a period of five years.

It is further contended by counsel for appellant that regardless of this statute the evidence established the ownership of the Wilson notes of $22,000 to be in E.

R. Hincke and that they were placed in the hands of Mary Hincke for the purpose of protecting them and preserving them for E. R. Hincke. We cannot agree with counsel in this contention. The evidence shows that Mary Hincke owned a valuable estate and a considerable amount of money, and Wilson in his testimony says: "I did not know that the funds represented by these notes belonged to Mrs. Hincke except what Mr. Hincke told me after he had given me checks time and again signed by Mary Hincke by him, and had given me some checks signed by him. He told me more than once during all the transactions I had with him that he was handling his mother's money and I understood that." And the testimony of E. R. Hincke shows that it was the money belonging to his mother that he loaned to Wilson and there is no testimony whatever to dispute this fact, except the fact that the notes were made payable to E. R. Hincke, and we think it appears that E. R. Hincke was also indebted to his mother and that under the law he had a right to prefer his mother as a creditor if he chose so to do.

It is again contended by counsel for appellant that the collateral delivered by E. R. Hincke to his mother was of greater value than the indebtedness of him to her. This, however, seems to have occurred to counsel since the trial of the suit as there was no evidence introduced that we are able to find showing the value of the securities or that they are of greater value than the indebtedness. It is true, as claimed by counsel, that if the securities are of greater value than the indebtedness that then appellant would be entitled to have the excess of such securities applied towards the payment of his debts.

We are not able to say from anything that appears in this record that the court erred in dismissing complainant's bill, and the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*